FILED
COURT OF APPEALS
DIVISION II

2013 AUG 27 AM 8: 35

STATE OF WASHINGTON

BY_____
                DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42914-4-II |
| Respondent, | |
| v. | |
| TERRY L. JACOB, | PUBLISHED IN PART OPINION |
| Appellant. | |

HUNT, P.J. — Terry L. Jacob appeals his jury conviction and sentence for felony driving while under the influence (DUI), former RCW 46.61.502(6) (2011). He argues that the trial court (1) miscalculated his offender score under RCW 9.94A.525(2)(e); (2) wrongly imposed the statutory maximum confinement term plus a community custody term; and (3) wrongly excluded testimony that he had used an asthma inhaler on the day of his arrest. The State asserts that the *Morales* opinion[1] "force[s]" it to concede the first sentencing error (miscalculated offender score);[2] the State concedes the second sentencing error (exceeded statutory maximum). We reject the State's "forced concession" of sentencing error based on *Morales*, adopt most (but not all) of Division One's rationale in *Morales*, and accept the State's second concession of

---

[1] *State v. Martinez Morales*, 168 Wn. App. 489, 278 P.3d 668 (2012).

[2] Br. of Resp't at 13.

No. 42914-4-II

sentencing error based on the Supreme Court's superseding of the *Brooks* notation.[3] We hold that the trial court did not err in excluding the inhaler testimony, affirm Jacob's conviction, vacate his sentence, and remand for recalculation of his offender score and resentencing.

FACTS

On October 3, 2011, Jacob consumed two or three alcoholic drinks between 5:17 PM and 6:02 PM at "Jimmy D's" in Belfair and drove away. I Report of Proceedings (RP) at 169. A few minutes later, three to five miles from Jimmy D's, Mason County Sheriff's Deputy Kelly LaFrance pulled over Jacob's vehicle. LaFrance learned that the vehicle was registered to Jacob, whose license had been revoked and for whom there was an outstanding arrest warrant. As LaFrance approached, she smelled a strong odor of intoxicants coming from the partially opened driver's window, asked Jacob to exit the car, and informed him that he had an outstanding arrest warrant. She observed that his eyes were red and watery, his speech was slurred, and he smelled of intoxicants. She placed Jacob in her patrol car and called Deputy Duain Dugan to process Jacob for a suspected DUI.

Dugan asked Jacob if he (Jacob) would allow him (Dugan) to conduct field sobriety tests; Jacob agreed. Dugan administered a horizontal gaze nystagmus (HGN) test, which indicated impairment. Dugan administered a finger dexterity test, which Jacob did not pass. Dugan also administered a finger-to-nose test: Jacob missed touching the tip of his nose with his finger six out of seven tries.

---

[3] *In re Pers. Restraint of Brooks*, 166 Wn.2d 664, 674, 211 P.3d 1023 (2009), *superseded by State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012).

2

No. 42914-4-II

Dugan placed Jacob under arrest for DUI and gave him the implied consent warning required for administering a breath test for the presence of alcohol. Jacob declined to take a breath test. After obtaining a blood draw search warrant, Dugan transported Jacob to the hospital, where a technician drew Jacob's blood at approximately 10:20 PM.

At trial, state toxicologist Justin Knoy testified that (1) Jacob's blood had registered .10 g/100ml blood alcohol concentration[4], and (2) certain "medication[s] like muscle relaxants or sleep aids" as well as "different inhalants that some people may use for huffing, like gasoline or Dust[-]Off"[5] may affect the subject's eyes during the HGN test. I RP at 120. Knoy did not, however, testify about the presence of any inhalants in Jacob's blood; nor did Jacob cross-examine Knoy about this subject.

Nevertheless, Jacob later sought to testify that, on the day of his arrest, he had used an "inhaler . . . for COPD."[6] II RP at 214. Jacob claimed that his use of an inhalant device brought into question the accuracy of the blood test results on the day of his arrest; but (1) he made no offer of proof that he had used the type of muscle relaxants, sleep aids, or non-medicinal inhalants "like gasoline or Dust[-]Off," which Knoy had testified *might* affect the subject's eyes during an HGN test; (2) he offered no expert testimony about the potential effect on his blood alcohol level of these substances in general or of his medicinal inhalant in particular, nor did he seek to recall State expert witness Knoy to explore these issues. I RP at 120. The superior court

---

[4] A person is guilty of driving while under the influence of alcohol when he has a blood alcohol concentration of .08 g/100ml or higher. Former RCW 46.61.502(1)(a) (2011).

[5] "Dust-Off" is an aerosol product used to clean computers. *Castaneda v. State*, 292 Ga.App. 390, 392, 664 S.E.2d 803 (2008).

[6] Chronic Obstructive Pulmonary Disease.

3

denied Jacob's request, ruling that his inhalant use was not relevant because there was no evidence to establish that inhalant use affects a blood alcohol content reading.

On December 2, 2011, a jury convicted Jacob of felony DUI under former RCW 46.61.502(6) (2011)[7] and first degree driving while license suspended (DWLS). At Jacob's December 8 sentencing, the trial court calculated his offender score as nine under RCW 9.94A.525(2)(e), based on eight of the nine offenses listed in the following criminal history, plus one additional point for Jacob's having been on community custody when he committed the present offense:

| Conviction | Date of Crime | Date of Sentence |
|---|---|---|
| Felony DUI | 01/03/09 | 05/11/09 |
| *DWLS 1 | 4/18/05 | - |
| DUI | 03/06/03 | 07/03/03 |
| DUI | 01/31/01 | 06/05/01 |
| DUI | 05/17/00 | 06/05/01 |
| DUI | 11/29/99 | 06/05/01 |
| DUI | 01/26/97 | 08/21/97 |
| *Felony Drug Charge | 06/10/91 | 01/22/93 |
| **DUI | 08/29/88 | 06/05/89 |

The trial court included two offender score points under RCW 9.94A.525(2)(e)(ii) for the following two prior convictions, because they had occurred *within ten years* before Jacob's present offense (for which he had been arrested on October 3, 2011): one felony DUI,

---

[7] The pertinent portion of former RCW 46.61.502(6) provides:
It is a class C felony punishable under chapter 9.94A RCW, or chapter 13.40 RCW if the person is a juvenile, if:
(a) The person has four or more prior offenses within ten years as defined in RCW 46.61.5055.

committed on January 3, 2009; and one non-felony DUI, committed on March 6, 2003.[8] The trial court did not, however, include an offender score point for Jacob's prior 2005 DWLS conviction, denoted by a single asterisk in the above grid.

The trial court then included six more offender points under RCW 9.94A.525(2)(e)(i) for the following six offenses that Jacob had committed *more than ten years* before the present offense, *and within five years since the last date* of release from confinement or entry of judgment and sentence: three points for three DUIs committed on January 31, 2001, May 17, 2000, and November 29, 1999; one point for a DUI committed on January 26, 1997; one point for a drug conviction, committed on June 10, 1991[9]; and one point for a DUI committed on August 29, 1988.[10]

The trial court sentenced Jacob to 60 months of confinement for the present felony DUI conviction and 364 days for the DWLS conviction;[11] it also imposed a community custody term of 12 months or the period of earned release, whichever was greater, such that Jacob's total

---

[8] Citing former RCW 46.61.5055(14)(c) (2008), Division One held: "For the purposes of this statute, '[w]ithin ten years' means that 'the arrest for a prior offense occurred within ten years before . . .the arrest for the current offense.'" *Morales*, 168 Wn. App. at 495 (alteration in original). The record before us on appeal does not include the arrest dates for Jacob's prior offenses; thus, we use the dates of commission of these offenses instead.

[9] Jacob's January 22, 1993 drug conviction is also denoted by a single asterisk in the above grid.

[10] Whether the trial court properly included Jacob's 1989 DUI conviction (denoted by a double asterisk in the above grid) in his offender score is in dispute in this appeal. This issue is also pivotal in our adoption in part and rejection in part of Division One's rationale in *Morales*, based on whether Jacob's January 22, 1993 drug conviction judgment and sentence can be used to establish a timeline for determining whether he had been crime free for the requisite five-year intervals under RCW 9.94A.525(2)(e)(i).

[11] Jacob does not appeal his driving while license suspended conviction and sentence.

5

combined sentence would not exceed the statutory maximum of 60 months. Jacob appeals his felony DUI conviction and sentence.

## ANALYSIS

### FELONY DUI OFFENDER SCORE: *MORALES* AND RCW 9.94A.525(2)(e)[12]

Jacob argues that the superior court erred in including his 1993 drug conviction and his 1989 DUI in calculating his felony DUI offender score, citing *Morales*. We agree that inclusion of his 1993 drug and 1989 DUI convictions was improper. We adopt most, but not all, of the corresponding *Morales* rationale; and we remand for resentencing.

In *Morales*, Division One of our court strictly interpreted RCW 9.94A.525(2)(e) and held that this statute specifies a limited class of prior offenses to be used in offender score calculations for felony DUI sentences. *Morales*, 168 Wn. App. at 498. RCW 9.94A.525(2)(e) provides:

> If the present conviction is felony driving while under the influence of intoxicating liquor or any drug (RCW 46.61.502(6)) . . . prior convictions of *felony driving while under the influence* of intoxicating liquor or any drug, *felony physical control of a vehicle while under the influence* of intoxicating liquor or any drug [(RCW 46.61.504(6))], and *serious traffic offenses*[13] *shall be included in the offender score if:*
>
> (i) The prior convictions were *committed within five years since the last date of release* from confinement (including full-time residential treatment) *or entry of judgment and sentence*; or

---

[12] *Morales* cites former RCW 9.94A.525 (2008). The legislature amended this statute in 2010 and 2011. LAWS OF 2010, ch. 274, § 403; LAWS OF 2011, ch. 166, § 3. These amendments did not alter the statute in any way relevant to this case or *Morales*; accordingly, we cite the current version of the statute.

[13] Under former RCW 9.94A.030(41)(a) and (b) (LAWS OF 2009, ch. 28, § 4, *recodified* as RCW 9.94A030(44)(a) and (b)), "serious traffic offenses" include nonfelony DUI (former RCW 46.61.502 (2008)), nonfelony actual physical control while under the influence (former RCW 46.61.504 (2008)), reckless driving (former RCW 46.61.500 (1990)), hit-and-run attended vehicle (RCW 46.52.020(5); and comparable out-of-state convictions for these listed offenses.

6

(ii) the prior convictions would be considered *"prior offenses within ten years"* as defined in RCW 46.61.5055.

(Emphasis added). These subsection (ii) "prior offenses," however, do not include every crime; rather, they are limited to the following statutorily specified offenses: nonfelony DUI (RCW 46.61.502), nonfelony physical control of vehicle while under the influence (RCW 46.61.504), vehicular homicide (RCW 46.61.520), vehicular assault (RCW 46.61.522), negligent driving (RCW 46.61.5249), reckless driving (RCW 46.61.500), and reckless endangerment (RCW 9A.36.050); these "prior offenses" also include deferred prosecutions and comparable out-of-state convictions for these listed crimes. Former RCW 46.61.5055(14)(a) (2011).

A. Subsection (ii) "prior [former RCW 46.61.5055 (2011)] offenses within ten years"

Division One turned first to subsection (2)(e)(ii) of RCW 9.94A.525 to determine (1) which of Morales' prior convictions qualified as "prior offenses . . . as defined in former RCW 46.61.5055 (2008)," and (2) which of those "prior offenses" had occurred within ten years of his current felony DUI conviction. *Morales*, 168 Wn. App. at 495. The court then determined that Morales' offender score should include three points for three prior nonfelony DUI convictions during this ten-year period. *Morales*, 168 Wn. App. at 495; RCW 9.94A.525(2)(e)(ii). Adopting this part of Division One's *Morales* analysis, we hold that under subsection (ii) the trial court erred in including Jacob's 1993 drug conviction in his offender score because this conviction did not occur within ten years before his present 2011 felony DUI conviction.[14]

---

[14] We further note that Jacob's 1993 drug conviction was also not includable in his offender score under RCW 9.94A.525(2)(c) because, although it is a class C prior felony, it is not a sex offense, an express prerequisite for offender score inclusion under this statutory subsection.

B. Subsection (i) "prior convictions" committed within five years "since" release from confinement or entry of judgment and sentence

Turning to subsection (2)(e)(i) of RCW 9.94A.525, Division One next determined which prior offenses had occurred within five-year intervals since the last date of release from confinement or entry of judgment and sentence for a prior offense. Division One identified these five-year intervals as having accumulated *during* subsection (ii)'s ten-year period immediately preceding the current offense. *Morales*, 168 Wn. App. at 495-96, 498. Strictly interpreting RCW 9.94A.525(2)(e), Division One held that (1) only statutorily specified prior convictions occurring during an RCW 9.94A.525(2)(e)(i) five-year interval can count as offender score points for felony DUI sentences; and (2) the trial court erred in considering Morales' 1996 assault conviction, which occurred within such a five-year interval, because assault is not one of the prior offense that RCW 9.94A.525(2)(e) includes for felony DUI offender score calculation purposes. *Morales*, 168 Wn. App. at 497-500.

1. Prior convictions that count as offender score points

We find persuasive Division One's reasoning in determining the type of "prior convictions" that are includable under subsection (i) for felony DUI offender score purposes. Thus, we adopt the first part of its *Morales* holding—that under subsection (i) only RCW 9.94A.525-specified prior convictions count as offender score points for purposes of sentencing a defendant convicted of former RCW 46.61.502(6) (2008) felony DUI. Accordingly, we agree with Jacob and hold that, like the improper inclusion of Morales' prior assault conviction in his offender score, the trial court here similarly erred in including Jacob's 1993 drug conviction in his offender score because drug convictions are not among the statutorily specified prior convictions for offender score inclusion under subsection (i) of RCW 9.94A.525(2)(c).

8

## 2. Prior convictions that begin the running of the five-year intervals

But we decline to adopt the second part of Division One's *Morales* rationale and holding, which use these same statutorily specified prior convictions also *to define the five-year intervals* during which commission of these prior offenses are includable in a felony DUI offender score under RCW 9.94A.525(2)(e)(i). Division One (1) focused on the legislature's use of the term "any crime" in RCW 9.94A.525(2) subsections (b), (c), and (d); and (2) reasoned that, because subsection (e)(i) of RCW 9.94A.525(2) does not similarly use the phrase "any crime," the legislature must have intended that only the crimes specified in RCW 9.94A.525(2)(e) could underlie "release from confinement" or "entry of judgment and sentence." *Morales*, 168 Wn. App. at 493. Respectfully disagreeing with Division One on this point, we do not adopt that part of its *Morales* rationale to define the type of offenses that circumscribe subsection (i) five-year statutory intervals. Instead, we hold that, in determining whether a defendant has been crime-free for five-year intervals under RCW 9.94A.525(2)(e)(i), the sentencing court must decide whether one of the listed prior offenses occurred within a five-year period measured from the last preceding judgment and sentence or the last preceding release from custody for *any* crime.

To support our holding, and our departure from Division One's *Morales* holding on this point, we first look to the statute's plain language. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)). Where different language is used in the same connection in different parts of a statute,

it is presumed that a different meaning was intended.[15] *State v. Roggenkamp*, 153 Wn.2d 614, 625, 106 P.3d 196 (2005) (citing *State v. Beaver*, 148 Wn.2d 338, 343, 60 P.3d 586 (2002)). Courts will not read into a statute that which the legislature left out. *Seattle Ass'n of Credit Men v. Gen. Motors Acceptance Corp.*, 188 Wash. 635, 639, 63 P.2d 359 (1936). Applying these statutory construction principles here, we hold that the lack of the phrase "any crime" in RCW 9.94A.525(2)(e)(i) neither defines nor limits the parameters of the five-year statutory intervals to which the sentencing court may look for commission of additional "prior convictions" outside subsection (ii)'s ten-year period immediately preceding the present conviction.

Subsections (b), (c), and (d) of RCW 9.94A.525(2) specify only which prior convictions "shall *not be included*" in offender score calculations when "the offender spends five years in the community without committing *any crime*." RCW 9.94A.525(2)(d)[16] (emphasis added). In

---

[15] For example, we presume that the legislature intended different meanings for the following different RCW 9.94A.525(2) terms: *exclusion* from an offender score specific "prior convictions" listed in subsections (b), (c), and (d) outside specified crime-free intervals, and *inclusion* in an offender score other specific subsection (e)(ii) "prior convictions would be considered 'prior offenses within ten years' as defined in RCW 46.61.5055." In our view, the different terms used throughout the felony DUI offender score statute show that the legislature used "inclusion" and "exclusion" of prior offenses when it so intended and that it did not use these terms when it was not so referring, such as when it expressed the parameters of subsection (i)'s five-year intervals. *See* RCW 9.94A.525(2)(e)(i).

[16] RCW 9.94A.525(2) provides in pertinent part:
> (b) Class B prior felony convictions other than sex offenses shall not be included in the offender score, if since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent ten consecutive years in the community without committing any crime that subsequently results in a conviction.
> (c) Except as provided in (e) of this subsection, class C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the

contrast, subsection (e)(i) of RCW 9.94A.525(2) expressly requires offender score *inclusion* of qualifying "prior convictions" that were "committed within five years since the last date of release from confinement (including full-time residential treatment) or entry of judgment and sentence." Nothing in the pertinent statutory language extends the definition of includable "prior convictions" to the type of crimes underlying a release from confinement or a judgment and sentence that begins the five-year intervals during which conviction for these specified crimes counts in offender score calculations. Again, in our view, the statute's plain language does not support Division One's analysis.

Moreover, no express language in the statute suggests a contrary notion that the legislature intended to so limit the crimes used to determine the parameters of the five-year intervals. We will not read into the statute a limitation that the legislature did not establish and does not exist. *Seattle Ass'n of Credit Men*, 188 Wash. at 639 We further note that (1) the plain meanings of the subsection (i) phrases "release from confinement" or "entry of judgment and sentence" include confinement or sentence for any type of crime, RCW 9.94A.525(2)(e)(i); and (2) if the legislature had intended to restrict these parameter-defining crimes to a limited class, as

---

offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.
(d) Except as provided in (e) of this subsection, serious traffic convictions shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender spent five years in the community without committing any crime that subsequently results in a conviction.

it did expressly for offender score inclusion purposes, it would also have expressly done so.[17]

We apply a similar plain language analysis to the legislature's use of the word "since," which means "after," to mark the beginning of a subsection (i) five-year interval. *See* RCW 9.94A.525(2)(e)(i). Under this approach, prior convictions for specified offenses count toward a felony DUI offender score only if they occurred within five years *after* another prior conviction or release from confinement for any crime.[18] Here, the trial court included Jacob's 1989 DUI conviction in his offender score for his current felony DUI. But although this 1989 DUI conviction occurred within five years of Jacob's 1993 drug conviction, his 1989 DUI conviction occurred *before*, not *after*, his 1993 drug conviction. Therefore, as the State conceded at oral argument,[19] under the statute's plain language, Jacob's 1989 DUI conviction should not have been included in his current offender score.

---

[17] In our view, the legislature's parenthetical note that "confinement" also "includ[es] full-time residential treatment" simply explains its intent for the meaning of "confinement." RCW 9.94A.525.2(e)(i). It does not lead us to Division One's conclusion that the legislature thereby intended to limit the crimes defining the five-year interval boundaries to those crimes susceptible to full-time residential treatment.

[18] Contrast with former RCW 46.61.5055(14)(c) (2011), which provides that "[w]ithin ten years" means that the arrest for a prior offense occurred within ten years *before or after* the arrest for the current offense. (Emphasis added).

[19] Although the State conceded that Jacob's 1993 violation of the Uniform Controlled Substance Act (VUCSA) is not an offense includable in his offender score for the current offense, the State argued, and we agree, that Jacob's 1993 VUCSA is properly used as a time-boundary for marking statutory prior five-year crime-free intervals. The State did not also concede, however, that "since" means "after" and not "before." Instead, the State asserted that (1) "since" means "within" five years of the stated last event, which includes "before" and "after" the last date of release from confinement or judgment and sentence; and (2) thus, Jacob's 1989 DUI conviction could be counted as an offender score point, not relegated merely to setting a boundary to circumscribe a statutory five-year period.

We hold, therefore, (1) that the trial court improperly included Jacob's 1989 DUI in his offender score; but (2) the trial court did not err in using Jacob's 1993 drug conviction to begin a five-year interval "since" Jacob's release from confinement or last judgment and sentence. Accordingly, we vacate Jacob's sentence and remand for recalculation of Jacob's offender score and resentencing consistent with our analysis.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## EXCLUSION OF INHALANT DEVICE TESTIMONY

Jacob argues that his proposed testimony about his COPD inhaler use on the day of his DUI arrest was relevant and that the trial court erred in excluding it because Knoy indicated that inhalants affect blood alcohol levels. This argument fails.

### A.  Standard of Review

We review a trial court's evidentiary rulings for abuse of discretion. *State v. Finch*, 137 Wn.2d 792, 810, 975 P.2d 967, *cert. denied*, 528 U.S. 922 (1999). A court abuses its discretion when its evidentiary ruling is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). We may uphold a trial court's evidentiary ruling on the grounds that the trial court used or on other proper grounds the record supports. *State v. Powell*, 126 Wn.2d 244, 259, 893 P.2d 615 (1995).

Evidence is relevant if it has "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

13

without the evidence.'" *State v. Gregory*, 158 Wn.2d 759, 835, 147 P.3d 1201 (2006) (quoting ER 401). The threshold for admitting relevant evidence is low; even minimally relevant evidence is admissible. *Gregory*, 158 Wn.2d at 835 (citing *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002)).

### B. Mischaracterization of Knoy's Testimony

First, we note that Jacob mischaracterizes Knoy's testimony. Knoy testified only that the HGN test measures "the involuntary jerking of the eyes," which is "brought on by alcohol, [and] other central nervous system depressants," which could be "prescription medication like muscle relaxants or sleep aids that may be categorized as a depressant" or "different inhalants that some people may use for huffing, like gasoline or Dust Off for instance, and also PCP [phencyclidine]" in the person's system. I RP at 119-20. Knoy did not testify on direct examination about the effect of any medications or other substances that did or might have an effect on *blood alcohol level*; nor did Jacob attempt to elicit such testimony on cross-examination. Thus, contrary to Jacob's argument to the trial court in support of his proffered testimony, Knoy did not testify "about medications that *may* have an effect on *blood alcohol level content*." II RP at 213-14 (emphasis added). In the absence of any evidence that medicinal inhaler use affects blood alcohol levels, Jacob's proposed testimony that he had used an inhaler the day he was arrested was irrelevant. Thus, we hold that the trial court did not abuse its discretion in excluding this testimony.

### COMMUNITY CUSTODY AND INCARCERATION

Jacob argues that the trial court erred in imposing the statutory maximum term of confinement plus a term of community custody that together exceed the statutory maximum and,

therefore, we must remand for resentencing. The State concedes this error, acknowledging that the trial court's notation about not exceeding the statutory maximum term no longer operates to ensure the sentence's validity in light of our Supreme Court's recent decision in *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012). Agreeing with Jacob, we accept the State's concession of error.

Under RCW 9.94A.701(9), the combined terms of confinement and community custody cannot exceed the statutory maximum sentence for the crime. Here, the trial court imposed the statutory maximum sentence of 60 months of confinement under RCW 9A.20.021(1)(c) and a community custody term that would be the greater of either 12 months[20] or the period of any earned release, such that Jacob's total combined sentence would not exceed 60 months. In *Boyd*, the Supreme Court held that the trial court cannot impose a sentence in excess of the statutory maximum and that the so-called "*Brooks* notation"[21] (which the trial court used here in an attempt to keep Jacob's sentence from exceeding the statutory maximum) no longer complies with statutory requirements of RCW 9.94A.701(9), which the legislature amended in 2010. *Boyd*, 174 Wn.2d at 472. Instead, the trial court must reduce the term of community custody whenever the standard range confinement in combination with the community custody term

---

[20] RCW 9.94A.701(3) authorizes a one-year period of community custody.

[21] The "*Brooks* notation" was a hand-written addition to the judgment and sentence stating that the total combined term of confinement and community custody actually served may not exceed the statutory maximum. *Brooks*, 166 Wn.2d at 674, superseded *by Boyd*.

exceeds the statutory maximum. RCW 9.94A.701(9); *Boyd*, 174 Wn.2d at 472. Accepting the State's concession of error, we hold that Jacob's sentence was improper under *Boyd*.[22]

We affirm Jacob's felony DUI conviction, vacate his sentence, and remand for offender score recalculation and resentencing.

A majority of the panel having determined that this part of the opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, P.J.

We concur:

Penoyar, J.

Bjorgen, J.

---

[22] Although RCW 9.94A.701(9) became effective on June 10, 2010, before the trial court sentenced Jacob for the current offense, this sentencing occurred *before* the Supreme Court held in *Boyd* that such a "*Brooks* notation" sentence was improper.